UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TARMAC AMERICA, LLC,

    Plaintiff,

v.                                     Case No. 8:12-cv-867-T-33EAJ

PRO WAY PAVING SYSTEMS,
LLC, et al,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Pro Way Paving Systems, LLC's Second Motion for Final Default Judgment against Intervenor-Plaintiff R.A. Connelly, Inc. (Doc. # 118), filed on April 24, 2014. For the reasons that follow, the Court grants the Motion.

**I.    Factual Background**

In September of 2010, R.A. Connelly contracted with the Department of the Air Force 6th Mobility Wing for multiple construction projects at MacDill Air Force Base. (Doc. # 52 at ¶ 8; Doc. # 118 at ¶ 1). R.A. Connelly, as principal, obtained two payment bonds (No. SB002000249 and No. SB002000248) from Ullico Casualty Company, as surety, on September 23, 2010, pursuant to 40 U.S.C. § 3131, also known as the Miller Act. (Doc. # 52 at ¶¶ 24-25; Doc. # 118 at ¶¶

2-3; Doc. # 118-1; Doc. # 118-2). According to the payment bonds, R.A. Connelly and Ullico "bound themselves jointly and severally . . . for the prompt payment to all persons having a direct relationship with [R.A.] Connelly for furnishing labor, material, or both in the prosecution of the work provided in the Prime Contract. . . ." (Id.).

In June of 2011, R.A. Connelly entered into a subcontract with Pro Way for work for the project. (Doc. # 52 at ¶ 9; Doc. # 118 at ¶ 5; Doc. # 118-3). From August 24, 2011, through December 15, 2011, R.A. Connelly paid Pro Way $158,107.50 on its invoices. (Doc. # 118 at ¶ 6). However, although the November invoice (No. 1786) for $34,294.50 had been issued, it was never paid. (Id.; Doc. # 118-4).

In December of 2011, Pro Way believed it had finished its labor, services, and materials on the project. (Doc. # 52 at ¶ 11; Doc. # 118 at ¶ 7). Therefore, it issued invoice No. 1814 for $7,398.00 and No. 1815RET for $22,200.00. (Doc. # 118 at ¶ 7; Doc. # 118-5; Doc. # 118-6). However, upon the request of R.A. Connelly, Pro Way delivered additional materials to the project and requested a change order to the subcontract. (Doc. # 52 at ¶ 12; Doc. # 118 at ¶ 8; Doc. # 118-7). Pro Way then invoiced (No. 1832) R.A. Connelly for

$1,409.00 on December 31, 2011. (Doc. # 118 at ¶ 8; Doc. # 118-8).

In January of 2012, R.A. Connelly paid $15,395.00 to Pro Way. (Doc. # 118 at ¶ 9). By mid-February of 2011, however, R.A. Connelly had failed to pay Pro Way an outstanding balance of $49,906.50 (Doc. # 118 at ¶ 10), and as a result, Pro Way served its Notice of Nonpayment on R.A. Connelly (Doc. # 52 at ¶ 27, Doc. # 118 at ¶ 11; Doc. # 118-9).

In early 2012, Pro Way was directed to perform additional work on the project. (Doc. # 118 at ¶ 12). Following completion, Pro Way sent R.A. Connelly an invoice (No. 1906) seeking additional payment of $26,562.70. (Id.; Doc. # 118-10).

Pro Way finished the last of its labor, services, and materials for the project in March of 2012. (Doc. # 118 at ¶ 13). In April of 2012, Pro Way served its Amended Notice of Nonpayment on R.A. Connelly seeking $76,469.20, which Pro Way contends has not been paid. (Doc. # 52 at ¶ 28; Doc. # 118 at ¶ 15; Doc. # 118-11).

II. **Procedural History**

Plaintiff Tarmac America, LLC initiated this action against Pro Way, Robert Vollmer, and Ullico on April 20, 2012 (Doc. # 1), and filed an Amended Complaint against the same

3

on August 15, 2012 (Doc. # 33). The Amended Complaint alleged five counts: Count I was brought against Ullico; Counts II, IV, and V were stated against Pro Way; and Count III alleged a claim against Vollmer. (Id.).

The Court granted R.A. Connelly's Unopposed Motion to Intervene as Plaintiff on December 11, 2012. (Doc. # 48). R.A. Connelly filed its Intervenor Complaint against Pro Way on December 11, 2012. (Doc. # 49). Pro Way answered the Intervenor Complaint and alleged counterclaims against R.A. Connelly on December 24, 2012. (Doc. # 52). R.A. Connelly filed its Answer and Affirmative Defenses to Pro Way's counterclaims on January 17, 2013. (Doc. # 53).

As a result of R.A. Connelly failing to file a notice of appearance of counsel in the time directed by the Court, Pro Way and Vollmer filed a Motion for Sanctions on March 12, 2014 (Doc. # 109), seeking to strike R.A. Connelly's pleadings from the record; specifically R.A. Connelly's Intervenor Complaint (Doc. # 49) and R.A. Connelly's Answer and Affirmative Defenses to Pro Way's counterclaims (Doc. # 53). R.A. Connelly failed to file a response to the Motion in the time provided by Local Rule 3.01(b) and Rule 6(d), Fed. R. Civ. P. Accordingly, the Court considered the Motion for Sanctions as unopposed. The Court granted the Motion for

4

Sanctions to the extent R.A. Connelly's pleadings were stricken from the record.

Upon the filing of an application for Clerk's entry of default, the Clerk of the Court entered default against R.A. Connelly on April 17, 2014. (Doc. # 114). Thereafter, on April 18, 2014, this Court entered an Order advising Pro Way that it should move forward without delay in seeking a default judgment against R.A. Connelly in an effort to bring this matter toward its final resolution. (Doc. # 115); see Local Rule 1.07(b), M.D. Fla. That same day, Pro Way and Vollmer filed a Motion for Final Default Judgment against R.A. Connelly. (Doc. # 116). However, the Motion was devoid of any legal authority or factual allegations demonstrating Pro Way and Vollmer's entitlement to default judgment against R.A. Connelly. As a result, the Court denied the Motion without prejudice on April 21, 2014. (Doc. # 117). On April 24, 2014, Pro Way, individually, filed the present Motion. (Doc. # 118). R.A. Connelly has failed to file a response in opposition to the Motion.

### III. Legal Standard

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is

shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). DirecTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. See Tyco Fire & Sec. LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a Court must ensure that there is a sufficient basis in the pleadings for the judgment to be entered. Id. A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact and bars the defendant from contesting those facts on appeal. Id.

**IV. Analysis**

In the present Motion, Pro Way seeks judgment in its favor on the two counterclaims asserted against R.A. Connelly: (1) Breach of Subcontract and (2) Breach of Bonds.

**A. Breach of the Subcontract**

Under Florida law,[1] in order to prove a claim for breach of contract, the plaintiff must establish (1) a valid contract; (2) a material breach; and (3) damages. Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). Here it is undisputed that in June of 2011, R.A. Connelly and Pro Way entered into a subcontract for Pro Way to supply labor, services, and materials for the project. (Doc. # 52 at ¶ 9; Doc. # 118 at ¶ 5; Doc. # 118-3). R.A. Connelly has not challenged the validity of this subcontract.

To constitute a material breach, a party's nonperformance must "go to the essence of the contract." Covelli Family, L.P. v. ABG5, L.L.C., 977 So. 2d 749, 752 (Fla. 4th DCA 2008). A party's "failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach." Id. In the present action, Pro Way has alleged, and R.A. Connelly is deemed to have admitted, that R.A. Connelly materially breached the subcontract as Pro Way furnished labor, services, and materials to R.A. Connelly, but R.A. Connelly failed and refused to pay Pro Way

---

[1] In the present Motion, Pro Way submits that the breach of subcontract claim is governed by Florida law. (Doc. # 118 at 6). As R.A. Connelly has not appeared in this action, this contention has not been disputed. Therefore, the Court will apply Florida law to the breach of subcontract claim.

the amounts due. (Doc. # 52 at ¶¶ 16-22; Doc. # 118 at 6). Finally, Pro Way submits that as a result of R.A. Connelly's material breach, it has sustained damages in the total amount of $76,469.20 in unpaid invoices. (Doc. # 52 at ¶ 18; Doc. # 118 at 6).

Accordingly, as the well-pled allegations demonstrate the elements necessary to prove a claim for breach of contract, the Court finds that Pro Way has established that it is entitled to a default judgment against R.A. Connelly on its breach of subcontract claim.

**B. Breach of Miller Act Payment Bonds**

The purpose of a Miller Act payment bond is "to protect subcontractors and suppliers who provide labor and material for a federal project." U.S., for Use & Benefit of Pertun Const. Co. v. Harvesters Grp., Inc., 918 F.2d 915, 917 (11th Cir. 1990). "The Miller Act requires contractors to post bond to ensure payment of persons supplying labor or materials on any government construction contract exceeding $100,000.00." U.S. ex rel. Capital Computer Grp., LLC v. Gray Ins. Co., 453 F. App'x 905, 906 (11th Cir. 2011) (citing 40 U.S.C. § 3131(b)(2)). "Because federally owned property is exempt from liens that normally protect laborers and suppliers from non-payment, the Miller Act was enacted to provide a substitute

8

remedy." Id. "The Miller Act is to be liberally construed to carry out its remedial purpose." Id. at 908.

"The Miller Act by its terms covers 'every person that has furnished labor or material' for the project." Id. (quoting 40 U.S.C. § 3133(b)(1)). "The right of action to sue on the bond, however, extends only to the subcontracting and sub-subcontracting level." Id. "There is no right of action for those further down the contracting chain." Id.

The two relevant payment bonds (No. SB002000249 and No. SB002000248) state:

> OBLIGATION:
> We, the Principal [R.A. Connelly] and Surety(ies) [Ullico], are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, and successors, jointly and severally.  However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us.  For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety.  If no limit of liability is indicated, the limit of liability is in the full amount of the penal sum.
>
> * * *
>
> CONDITIONS:

9

> The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notices of those modifications to the Surety(ies) are waived.

(Doc. # 52 at ¶¶ 24-25; Doc. # 118 at ¶¶ 2-3; Doc. # 118-1; Doc. # 118-2). According to Pro Way:

> The language of the Miller Act bonds . . . operates in a reverse fashion: the principal and surety bound themselves to the owner for payments to all subcontractors of the principal, with the bond being void if those payments are made; if the payments are not made, then the principal and surety are jointly and severally liable for the payments.

(Doc. # 118 at 7).

The counterclaim indicates that Pro Way furnished labor, services, and materials to R.A. Connelly, but R.A. Connelly failed and refused to pay Pro Way the amounts due. (Doc. # 52 at ¶¶ 16-22; Doc. # 118 at 6). Therefore, on February 14, 2012, Pro Way served its Notice of Nonpayment on R.A. Connelly Inc. and served an Amended Notice of Nonpayment on April 10, 2012. (Doc. # 52 at ¶ 27-28, Doc. # 118 at ¶¶ 11, 15; Doc. # 118-9; Doc. # 118-11). According to Pro Way, "By serving the Notice of Nonpayment and then the Amended Notice of

10

Nonpayment, Pro Way perfected its claim against the payment bonds." (Doc. # 118 at 7). As a result, Pro Way contends that R.A. Connelly, as Principal on the bonds, is jointly and severally liable to Pro Way under the bonds for the outstanding amount due of $76,469.20. This Court agrees.

Based upon the Clerk's entry of default, the well-pled factual allegations in the counterclaims, and the Motion itself, the Court determines that Pro Way's allegations support a finding that R.A. Connelly (1) breached the subcontract and (2) breached the Miller Act payment bonds. Accordingly, Pro Way's Motion is granted and a hearing on this matter is not needed.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Pro Way Paving Systems, LLC's Second Motion for Final Default Judgment against Intervenor-Plaintiff R.A. Connelly, Inc. (Doc. # 118) is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Pro Way Paving Systems, LLC and against R.A. Connelly, Inc. in the amount of $76,469.20.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>14th</u> day of May, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel and Parties of Record